United States District Court
Southern District of Texas

**ENTERED**

August 31, 2016

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE RUBEN ARGUETA-PADILLA, | § | |
| Movant, | § | |
| | § | |
| | § | |
| v. | § | Case No. 1:14-cv-129 |
| | § | (Criminal No. 1:10-cr-1126-1) |
| | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is Jose Ruben Argueta-Padilla's pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (hereinafter Argueta-Padilla's "Motion" or "§ 2255 Motion"). Dkt. No. 1. It is recommended that Argueta-Padilla's § 2255 Motion be dismissed with prejudice. Additionally, it is recommended that the Court decline to issue a certificate of appealability.

## I.  Jurisdiction

This Court has jurisdiction over Argueta-Padilla's Motion pursuant to 28 U.S.C. § 1331 and § 2255.

## II. Background and Procedural History

On October 14, 2010, Argueta-Padilla pleaded guilty to being an alien unlawfully found in the United States after deportation, having previously been

convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b). *See United States of America v. Jose Ruben Argueta-Padilla*, No. 1:10-cr-01126-1, CR Dkt. No. 54 at 1.[1]  On September 29, 2011, United States District Judge Hilda Tagle sentenced him to 95 months of imprisonment and a three-year term of supervised release without supervision.  CR Dkt. No. 64. Judgment was entered on October 12, 2011.  CR Dkt. No. 54.  Argueta-Padilla filed a direct appeal and, on April 16, 2013, the Fifth Circuit affirmed the district court's judgment.  CR Dkt. Nos. 89, 90.  Argueta-Padilla did not file a petition for writ of certiorari in the United States Supreme Court. Dkt. No. 1 at 3.

On or about June 4, 2014, Argueta-Padilla filed his timely instant Motion. Dkt. No. 1.[2]  In his Motion, Argueta-Padilla raised five ineffective assistance of counsel claims.  *See* Dkt. No. 4-5, 7-9. Specifically, Argueta-Padilla claimed his trial counsel, Phillip T. Cowen, was ineffective: (1) in failing to advise him of his constitutional rights while entering a guilty plea; (2) in failing to argue sufficiency of the evidence to support his guilty plea; (3) in failing to file a motion to dismiss the indictment due to invalid deportation; (4) in failing to move for a speedy trial; and (5) "by improperly making a claim of innocence from a prior conviction for drug

---

[1]  Hereinafter, Argueta-Padilla's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

[2]  Argueta-Padilla certified that he placed his Motion within the prison mailing system on June 4, 2014. Dkt. 1 at 14. As his conviction did not become final until July 16, 2013, 90 days after the Fifth Circuit dismissed his appeal, the Motion is timely. Thus, this Court applies the mailbox rule. *See generally Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (noting that, for statute of limitations purposes, a pro se prisoner's application is filed on the day it is placed in the prison mailing system); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (applying the mailbox rule to prisoner proceedings under 28 U.S.C. § 2255).

trafficking." *Id.* As ordered by this Court, Cowen filed an affidavit, along with supporting documents, describing his communications with Argueta-Padilla relating to Argueta-Padilla's claims. *See* Dkt. Nos. 10, 17. The Government argued that the record clearly contradicts Argueta-Padilla's claims and that his conclusory statements otherwise do not prove his claims. *See generally* Dkt. 19.

On June 9, 2016, the Court held an evidentiary hearing with the goal of precisely identifying Argueta-Padilla's claims and creating a more concise record. *See* Dkt. Minute Entry on June 9, 2016. However, during the hearing and in response to questions posed to him by his court-appointed counsel, Argueta-Padilla stated that he "ha[d] nothing against [Cowen,]" withdrew his five claims, and amended his Motion on the record. *Id.*; Dkt. No. 23 at 6-9, 12. In his only remaining claim, Argueta-Padilla alleges that the sentence imposed by Judge Tagle was unreasonable. *Id.* at 9.

### III. Legal Standards

#### A.  28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude.  *United*

*States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).   If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

### B. Ineffective Assistance of Counsel

The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them.  *Missouri v. Frye*, ____ U.S. ____, 132 S.Ct. 1399, 1405 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).   Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process.  *Laffler v. Cooper*, ____ U.S. ____, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).   Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible.  *Laffler*, 132 S.Ct. 1376, 1385-1386.

In *Strickland v. Washington*, the Supreme Court announced that in order to succeed on an ineffective assistance of counsel claim, a defendant must show both: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   Courts need not even address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the

test in the same order.  *Id.* at 697.  Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  *Id.* at 687.  As it is easy to second-guess counsel's performance after a conviction or adverse sentence, a fair assessment of performance requires reconstructing the circumstances of counsel's conduct from his perspective at the time rather than looking towards the "distorting effects of hindsight."  *Id.* at 689.  As such, counsel is strongly presumed to have performed adequately, and made decisions using reasonable professional judgment.  *Id.* at 690.

Additionally, the sufficiency of counsel's representation may be determined, and indeed substantially influenced, by the defendant's own statements and actions.  *Id.* at 691.  As stated by the Supreme Court, an attorney's actions are usually based on information supplied by the defendant, and, for example, investigative decisions or potential lines of defense are followed based upon what the client has said.  *Id.*  Counsel's conversations with the defendant may then be critical to properly assessing his actions in the course of litigation.  *Id.*

## IV. Discussion

As stated above, Argueta-Padilla withdrew his original claims and substituted those claims for a single claim arguing that the sentence he received was unreasonable.  Dkt. No. 23 at 6-8, 12.  As evidenced by the record, Argueta-Padilla substituted the claims knowingly, intelligently, and voluntarily.  *See id.*  In fact, Argueta-Padilla's attorney elicited testimony that it was his wish to withdraw each of his original claims.  *Id.* at 6-8.  However, Argueta-Padilla's amended claim is

not cognizable in a § 2255 motion.  Section 2255 motions are reserved for issues pertaining to constitutional rights that could not have been raised on direct appeal and would result in a "complete miscarriage of justice" if not reviewed.  *See United States v. Smith*, 844 F.2d 203, 205-06 (5th Cir. 1988).  Non-constitutional claims, like a district court's application of sentencing guideline provisions that could have been raised on direct appeal, may not be asserted in a § 2255 motion.  *See United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).  Argueta-Padilla's issue with Judge Tagle's application of the sentencing guidelines is exactly the type of claim that is not cognizable under Title 28 U.S.C. § 2255.  *See* Dkt. No. 23 at 9-12 (explaining that his claim relates to Judge Tagle's application of the sentencing guidelines).

Even if Argueta-Padilla were to contest the voluntariness of the withdrawal of his claims at the evidentiary hearing, Argueta-Padilla's original claims fail.  In claim 1, Argueta-Padilla argued that Cowen failed to effectively advise him of his "*Boykin* trial rights[,]" which resulted in an "unknown guilty plea" in violation of the Due Process Clause.  Dkt. No. 1 at 4 (errors in original).  Further, Argueta-Padilla argued "the record show[s] he did not intelligently and voluntarily, or understandingly waive his right to trial."  *Id.*

A defendant must intelligently, knowingly and voluntarily waive his trial rights, i.e. his privilege against compulsory self-incrimination, the right to a trial by jury, and his confrontation clause rights.  *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  Rule 11 of the Federal Rules of Criminal Procedure effectively codified *Boykin*, requiring a trial court to place a defendant under oath, determine whether

a plea is voluntary and free from outside threats or influences, and confirm that a defendant knowingly waived those rights applicable to his conviction. *See* FED. R. CRIM. P. 11(b).  While not conclusive, a defendant's "solemn declarations" in open court have a strong presumption of truthfulness. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Further, the representations of the defendant's lawyer, the prosecution, and the findings of the judge create a "formidable barrier" in subsequent habeas proceedings. *Id.*

Argueta-Padilla repeatedly swore under oath that his guilty plea was voluntary, that he understood the rights he waived, and that he did so knowingly. *See* CR. Dkt. No. 74 at 29, 36.  In fact, the Court specified exactly what his rights were, asking whether he understood each one.  *Id.* at 23-29.  At one point, Argueta-Padilla stated he was "not guilty" in an attempt to dispute that he had a prior aggravated felony conviction.  To clarify, the Court made an extensive inquiry as to what he meant and whether he actually understood the actions for which he pleaded guilty.  *Id.* at 38-40.  Additionally, Cowen stated, in his sworn affidavit, that he personally informed Argueta-Padilla of his rights, and explained the circumstances of his plea.  *See* Dkt. No. 17 at 6-13.  This Court finds that Cowen was not ineffective, regarding Argueta-Padilla's waiver of trial rights, as the record is clear: Argueta-Padilla was fully informed of his rights, and waived these rights knowingly, intelligently, and voluntarily.  Finally, Argueta-Padilla has not shown prejudice from Cowen's alleged failure to explain these rights as not only are his allegations conclusory and lack support in the record, but these rights were explained to him in open court.  *See* CR Dkt. No. 74 at 7-8, 18, 23-29.

In claim 2, Argueta-Padilla appeared to argue that the evidence was insufficient to sustain his prior drug conviction. For example, Argueta-Padilla stated that "there was not direct or circumstantial evidence that proves Petitioner intended to knowingly participate in any illegal conduct or evidence of a high probability of a subjective awareness of existence or deliberate contrivance to avoid learning of the illegal conduct." Dkt. No. 1 at 5-6 (errors in original). This "conduct" appears to be linked to his prior drug conviction as Argueta-Padilla argues "[t]he government was required to submit that Petitioner was guilty to possess with intent to distribute an illegal substance or knowingly agreeing to participate in a delivery." *Id.* at 5 (errors in original). Argueta-Padilla then argued that Cowen was ineffective for failing to make this argument. *Id.* at 5-6.

Argueta-Padilla cannot use this Court to dispute the sufficiency of evidence for a ten-year old state criminal conviction, nor can his counsel be ineffective for failing to argue insufficiency of the evidence to support the prior drug conviction while being sentenced for illegal reentry. *See Daniels v. United States*, 532 U.S. 374, 382 (2001) ("The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255."); *Custis v. United States*, 511 U.S. 485, 497 (1994). Construing his Motion liberally, Argueta-Padilla may be contesting that there was insufficient evidence of his prior conviction to determine at sentencing that it was an aggravated felony as defined in 8 U.S.C. § 1326(b). This argument also fails; the sentencing court had all of the relevant information relating to Argueta-Padilla's prior state court conviction, such as the

charging document, the judgment, and the basic facts surrounding the commission of the crime. *See* CR Dkt. No. 24 at 6.

Finally, Argueta-Padilla may be attacking the sufficiency of the evidence to support his illegal reentry conviction. That claim is also meritless. Argueta-Padilla himself addressed the Court and admitted to violating the essential elements of 8 U.S.C. §§ 1326(a) and 1326(b). *See* CR Dkt. No. 74 at 38-40. Further, at sentencing, Argueta-Padilla again admitted to engaging in conduct outlined in a factual summary containing all of the essential elements of the charged offense, when he stated that he was caught by Border Patrol agents after crossing from Mexico into United States territory. *See* CR Dkt. 66 at 12-13. Thus, for the reasons provided above, Argueta-Padilla did not receive ineffective assistance of counsel by Cowen's failure to dispute the sufficiency of the evidence regarding his convictions.

In claim 3, Argueta-Padilla appears to argue that Cowen should have moved to dismiss his indictment because his state conviction was "only for simple [misdemeanor] possession" of cocaine. Dkt. No. 1 at 7. Argueta-Padilla contends that his past conviction was not an aggravated felony because "[u]nder federal law, simple possession of any small amount of amount [of cocaine] is a misdemeanor." *Id.* As such, Argueta-Padilla argues that he was not deportable "as charged[,]" and that Cowen was ineffective by failing to make this argument. *Id.*

It is well established that 8 U.S.C. § 1326(a) forbids an alien who once was deported to return to the United States without special permission. *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998). Subsection (b)(2) of § 1326 authorizes an increase in sentence if the initial deportation was "'subsequent to a

conviction for commission of an aggravated felony[,]'" and is a penalty provision that does not require the Government to charge that factor within the indictment. *Id.* (citing 8 U.S.C. § 1326(b)(2)). Thus, the indictment must simply set forth the essential elements listed under subsection (a); that an alien had been deported and subsequently reentered or was found in the United States without special permission. *See id.* at 226-229; 8 U.S.C. § 1326(a).

The indictment for Argueta-Padilla states "an alien who had previously been . . . deported. . . after having been convicted of an aggravated felony, knowingly and unlawfully was present in the United States. . . having not obtained consent to reapply for admission into the United States from the Attorney General. . . ." CR Dkt. No. 6. The grand jury returned an indictment charging Argueta-Padilla, indicating that there was probable cause to go forward with the charges. *Id.* There is no reason to believe that there was a lack of evidence sufficient to find probable cause for the essential elements of § 1326(a). Thus, the indictment is facially valid, and Argueta-Padilla's counsel cannot be found ineffective for failing to move to quash the indictment. *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.").

However, if Argueta-Padilla seeks to argue that use of his prior conviction as a sentencing factor was inappropriate because it did not qualify as an aggravated felony, and that his counsel was ineffective in not challenging this at sentencing, then that claim also fails. *See generally* Dkt. No. 1 at 7. An aggravated felony is

defined as "illicit trafficking in a controlled substance. . . , including a drug trafficking crime[.]"  *See* 8 U.S.C. § 1101(43)(B).  While multiple crimes qualify as a drug trafficking crime, Title 21 U.S.C. § 841(a) states it is unlawful for any person to knowingly or intentionally distribute a controlled substance.  *See* 18 U.S.C. § 924(c)(iii)(D)(ii)(2); 21 U.S.C. § 841(a).  The guidelines largely track this definition, and define a drug trafficking offense as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance… or the possession of a controlled substance. . . with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 2L1.2(b)(1)(A)(i), Application Note (1)(B)(iv).

In 2006, Argueta-Padilla pleaded guilty to "Distribution of a Controlled Substance" and "Possession with the Intent to Distribute" in Montgomery County, Maryland, case number 105209C, and was sentenced to 18 months of imprisonment. CR Dkt. No. 24 at 6.  These offenses fall under the definition of "drug trafficking crime" as listed in both the Sentencing Guidelines and Controlled Substances Act, as his state convictions are similar to the prohibited offenses of "distribution of a controlled substance" and "possession with the intent to distribute a controlled substance."  Thus, Cowen was not ineffective for failing to make a frivolous argument contesting the classification of Argueta-Padilla's prior convictions as aggravated felonies under the Guidelines.  *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) (no finding ineffective assistance of counsel for not challenging a correct application of law at sentencing).

In claim 4, Argueta-Padilla argues that Cowen provided ineffective assistance

by failing to invoke his speedy trial rights and move for a faster sentencing.  Dkt. No. 1 at 8.  The Sixth Amendment entitles criminal defendants to a "speedy trial." Defendants maintain their Sixth Amendment right to a speedy trial up to sentencing.  *See United States v. Campbell*, 531 F.2d. 1333, 1335 (5th Cir. 1976).  In determining whether that right has been violated, the Supreme Court has enumerated four factors to consider: (1) the length of delay; (2) the reason of the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  However, the first factor, length of delay, is a "triggering mechanism" that necessitates consideration of the other factors only if the delay surpasses that which is "presumptively prejudicial." *Id.*  What constitutes a presumptive delay in sentencing has not been announced, as sentencing "shall be imposed without unreasonable delay" and whether a sentence is timely is based upon individual circumstances in the case.  *See Juarez-Casares v. United States*, 496 F.2d 190, 192 (5th Cir. 1974).  However, a presumptively prejudicial delay in other phases of trial is one year.  *See Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993).  Regardless of which test is applied to determine whether the length of delay triggers discussion of the other three factors, the Court finds that Argueta-Padilla was not prejudiced.

For example, should this Court apply the presumptive time period of one year, Argueta-Padilla was sentenced before a year's time.  *See* CR Dkt. Nos. 64-68 (11-month delay in sentencing, although the Court first attempted sentencing March 2, 2011).  Further, upon consideration of the individual circumstances of this case, the Court is inclined to find that the delay was not unreasonable because

Argueta-Padilla's sentencing was delayed by his continued concealment of his true identity and the blame rests entirely on his shoulders. *See generally id.*

Thus, the Court finds that consideration of the other three factors is unnecessary. Yet, consideration of those other factors further supports a finding that Argueta-Padilla's speedy trial rights were not violated. As mentioned above, the reason for the delay was due to Argueta-Padilla falsely claiming his father's identity until sentencing, when a D.N.A. test ultimately revealed that he had misled the Court. *See generally* CR Dkt. Nos. 64-67. In reaching this conclusion, the Court points to the numerous times in which Cowen conveyed to the Court Argueta-Padilla's contentions regarding his identity, and where Argueta-Padilla himself represented to be Alejandro Argueta-Rivera (his father). *See* CR Dkt. Nos. 66 at 6-12; 73 at 5; 74 at 4.

Further, prior to filing his Motion, Argueta-Padilla had not alerted the Government or trial court that he wished to invoke his right to a speedy trial. This weighs against a finding of a speedy trial right violation, as "the point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing." *Robinson*, 2 F.3d at 569. In *Robinson*, the defendant had "peppered" the trial court with speedy trial motions, but did not do so out of an honest desire for a speedy trial, because he remained largely silent regarding his speedy trial rights for a twenty-two month period prior to his indictment, and had filed for multiple continuances of his trial post indictment. *See id.* at 569-70. However, here, Argueta-Padilla never invoked his right to a speedy trial, and further requested continuances while awaiting D.N.A. testing to

determine his true identity.  *See* CR Dkt. Nos. 64; 65 at 5-7; 66 at 26; 67 at 8-7.

Finally, Argueta-Padilla cannot show he was prejudiced by the delay.  While it is true that sentencing could have commenced under his assumed name, this likely would have created further complications for Argueta-Padilla when his true identity was revealed.  As pointed out at the sentencing hearing by the Court and trial counsel, Argueta-Padilla could have been indicted for perjury.  *See* CR. Dkt. No. 66 at 12-13; Dkt. No. 17 at 2-3.  Further, the Court would have had to resentence Argueta-Padilla under his true identity, which in conjunction with any applicable upward departures under the Guidelines, could have earned him a much longer sentence than the one he received.  Thus, the delay did not prejudice Argueta-Padilla, and Cowen did not render ineffective assistance by failing to move for a speedy trial.

In claim 5, Argueta-Padilla argued that his counsel was ineffective because he "mistakenly submitted a defense of unrelated identity when [Argueta-Padilla] only claimed incorrectly he was named."  Dkt. No. 1 at 9 (errors in original).  Argueta-Padilla further claimed that he never denied the prior felony conviction of drug trafficking, and that he only told his attorney that he was incorrectly named in the indictment.  *Id.*  Argueta-Padilla claimed prejudice because the mistaken identity resulted in a significant increase in his sentence, presumably because of the enhancements applied to Argueta-Padilla's base offense level.  *Id.*

The record is clear in showing that Argueta-Padilla alone maintained this charade. For example, in multiple pre-trial hearings, Argueta-Padilla stated that Alejandro Argueta-Rivera was his true and correct name, and that he had not been

previously convicted of a felony.  CR Dkt. Nos. 73 at 5; 74 at 4, 35, 37-38.  Further, at sentencing, Judge Tagle accepted testimony from Argueta-Padilla where he stated that he never corrected the proper authorities despite noticing the error early in the criminal process.  CR Dkt. Nos. 66 at 14-16.  Finally, Cowen meticulously and repeatedly argued that his client was actually Alejandro Argueta-Rivera based on representations made solely by Argueta-Padilla.  *See* Dkt. No. 17; CR Dkt. No. 66 at 6-12.  If these representations to the Court were wrong, then Argueta-Padilla had ample opportunity to correct them in open court.  The Court declines Argueta-Padilla's invitation to reject the explicit findings made by Judge Tagle at sentencing regarding his participation in the continued concealment of his true identity.  *See* CR Dkt. No. 66 at 19-26.  Likewise, this Court does not find Argueta-Padilla's counsel ineffective for acting upon Argueta-Padilla's misrepresentations regarding both his identity and criminal history.  This Court does not find that prejudice occurred from Cowen's actions either, as, while resulting in the definitive identification of Argueta-Padilla, Argueta-Padilla's ultimate sentence stems entirely from his continued attempts to conceal his true identity.

## V.  Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to

proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted).  Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.   Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).   A certificate of appealability should not issue in this case as Argueta-Padilla has not made a substantial showing of the denial of a constitutional right.

## VI. Recommendation

It is recommended that Argueta-Padilla's § 2255 Motion be dismissed with prejudice.   Additionally, it is recommended that the Court decline to issue a certificate of appealability.

## VII. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions,   and   recommendation   in   a   magistrate   judge's   report   and

recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

 Signed on this 31st day of August, 2016.


**Ignacio Torteya, III**
**United States Magistrate Judge**